W. L. PENNINGER AND G. E. SACKVILLE, Respondents,
v. JAMES REILLEY AND B. G. REILLEY,
Appellants.

St. Louis Court of Appeals, March 10, 1891.

1. Justices of the Peace : SUFFICIENCY OF STATEMENT. A statement of a cause of action in a justice's court is sufficient, if it is drawn in the form of a count at common law for money had and received.

2. ———: PRACTICE, TRIAL: VARIANCE BETWEEN PLEADING AND EVIDENCE. A recovery cannot be had, even in an action commenced before a justice of the peace, if the statement of the plaintiff's cause of action is drawn in the form mentioned, and the evidence tends only to establish a cause of action for goods sold and delivered.

3. Statute of Frauds : PRACTICE, APPELLATE. A defense under the provisions of the statute of frauds cannot be raised for the first time in this court. Where the cause is commenced before a justice of the peace and appealed to the circuit court, the defense must in some way be brought to the attention of the latter court, as by objections to evidence or by the tender of instructions.

4. ———: PROMISE TO ANSWER FOR THE DEBT OF ANOTHER. The separate oral promise of one person to pay for goods sold, which are to be delivered to another person, is a promise to answer for the debt of another within the purview of the statute of frauds, if the sale was not made solely upon the credit of the promisor.

*Appeal from the Howell Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

REVERSED AND REMANDED.

*F. S. Heffernan, H. D. Green* and *Olden & Orr,* for appellants.

*Orchard & Winningham,* for respondents.

THOMPSON, J.—In this case there are two blanks in the bill of exceptions, omitting papers which are called

for by the recitals in the bill. These papers are supplied in the printed statement furnished by the appellants. The respondents, in their brief, admit that the appellants' statement is correct. We may, therefore, accept the appellants' printed statement, and the respondents' admission, as in the nature of a stipulation in this court supplying these omitted papers.

The action was commenced before a justice of the peace upon a statement of cause of action, the substantial part of which charges "that the defendants, James Reilley & Co., on the thirtieth day of July, 1887, were indebted to the plaintiffs in the sum of $131.35 for money then and there had and received by the said defendant for the use and benefit of the plaintiffs, which said sum is still due and wholly unpaid, for which amount plaintiffs ask judgment." There was no defensive written pleading, but, at the trial, the defendants made a general denial orally, and upon the issue thus made up the parties went to trial before a jury The plaintiffs had verdict and judgment for the full amount claimed, with interest, and the defendants prosecute this appeal.

It appeared from the evidence that the plaintiffs were partners, keeping a country store, and that the defendants were partners, doing business as contractors for the grading of the Current River railroad; that one Greely was a subcontractor under the defendants, and had a contract under them to grub and clear a portion of the right of way; that the plaintiffs had sold some goods to Greely's hands, but, hearing that Greely was getting hard up, began to desist from making such sales; that thereafter some of Greely's men came to the store of plaintiffs to get goods, and the two defendants came along with them; that one of the plaintiffs asked the defendants, "How about these men working for Greely;" that one of the defendants, James Reilley, replied, "All right, you can let the men working on this end of the work for Greely have goods, and *I will*

*see the amount paid.*" The witness thinks that this talk was in June, which was prior to the date of the items of the account sued on.

The same witness, Mr. Penninger, one of the plaintiffs, then proceeds, evidently referring to a conversation of a later date: "I tried to settle with them, and Barney Reilley said, 'it was all right, but we ought not to pay all of it; but, in order to settle the thing, I will give you $75.' I sold the goods to men on the orders from R. Greely, and these are the orders." Here the orders were exhibited, and the following is preserved as a sample of them:

"SEC., July 29, 1887.

,,*Penninger & Co.*:

"Deliver to G. W. Hughes $5 in merchandise, for work done on ———— R. R.

"[ Signed. ]          R. GREELY."

The witness added: "James Reilley & Co. paid me for the first month on orders given by Greely, but refused to pay me for the goods sold on these orders, and there is yet due me $131 on these orders." On cross-examination he also said: "I look to Reilley to pay, as he said he would see that it would be paid. I think the charges on my account are correct. They were taken from our books, I suppose, by our bookkeeper. I don't know whether we had these orders charged on our books to James Reilley & Co., or not, as I was most of the time attending to outside business. I never had any conversation with Barney Reilley at their headquarters in the month of August, in which I told Barney Reilley that, if they would not pay me for the goods advanced on these orders, I would go to Carter county, where Greely was working, and clearing right of way for McTigh & Co., and that I would there try and collect the money from Greely for goods advanced on these orders. The money James Reilley paid me on first month was paid on account of Greely, and not on account

of goods furnished by Penninger & Sackville (the plaintiffs) to Reilley & Co."

Here an account of goods furnished in May, 1887, by the plaintiffs directly to the defendants was handed to the witness, the effect of which was to contradict his statement, that the plaintiffs had furnished no goods to Reilley & Co., except on the orders of Greely. It should be added that the evidence of defendants was directly and explicitly contradictory to that of the plaintiffs on this point. They testified that they had never paid anything to plaintiffs for goods, except where the goods were furnished to themselves directly.

Mr. Penninger, one of the plaintiffs, also testified on his redirect examination that the defendants had paid the plaintiff a check for $2 for goods furnished to a man named Flood on orders of Greely, Flood having worked for Greely. This statement was explicitly contradicted by the evidence of the defendant.

The plaintiff next read in evidence a statement, which it was agreed by the plaintiffs and defendants an absent witness named George Padgett would testify to, if present, which statement is as follows: "I was present some time in near fourteenth day of August, 1887, and heard James Reilley tell M. R. Greely, subcontractor, that his (Greely's) men were so far from headquarters of the defendants, Reilley & Co., that his men did not want to go to headquarters to trade, he (Greely) could send them to Penninger & Sackville's store to buy their goods and supplies, and that they, Reilley & Co., would see the bills paid."

As this statement relates to an alleged conversation which took place on the fourteenth of August, which was the month following the date within which all the items as charged in the plaintiffs' statement, and as shown in their account, were furnished, it is totally irrelevant to any question in the case.

But the statement of the same witness continues as follows: "I was at work for Mr. Greely (the

subcontractor ) and helped to make out the pay-roll each month, and the orders given to Penninger & Sackville were deducted from the men's wages each month, as so much paid, and the defendants ( Reilley & Co. ) paid the hands on the pay-roll less the amount paid to Penninger & Sackville."

Mr. Greely, the subcontractor under the defendants, also testified as follows: "I was a subcontractor for grubbing and clearing the right of way under James Reilley & Co., west and east of Mt. View. I worked there in April, 1887, and continued till August, 1887. I gave these orders in evidence to Penninger & Sackville. We were working near Mt. View, and some of the men said they wanted to get goods at Penninger & Sackville's, and I told them I had no account with Penninger & Sackville, and they said Penninger & Sackville would take the orders, so I gave the orders and the goods were furnished. I came out behind on my contract with Reilley & Co., and could not pay my hands all I owed them."

On cross-examination the witness said : "If I ever heard any such statements as those set forth in this statement of Mr. Padgett's, I do not remember it. I do not remember any such contract. At the time I was suffering from catarrh in my head, and remember but little of what was said or done. The conversation may have occurred. Reilley may have said this, but I don't recollect. Reilley & Co. never authorized me to give these orders to Penninger & Sackville. When I made out my pay-roll I deducted these amounts paid to the men from the amounts due them on the pay-roll, and the balance due the men on the pay-roll was paid to the men by Reilley & Co. The men to whom I gave these orders were working for me, and I got credit for the amount so paid."

This was all the testimony offered for the plaintiff. The testimony adduced by the defendant contradicted the plaintiffs' testimony explicitly on every material

point, and tended to show that their arrangement with Greely, by which they paid his men directly, was merely designed to prevent the liens of his laborers from attaching to the road. They simply paid his men on the payrolls which he furnished them, and settled with him for the balance. Their offer of $75 to the defendant was intended by way of compromise, and to prevent litigation. They never authorized Greely to give the orders on which the goods were furnished, and never in any conversation with the plaintiffs agreed to see the amount paid.

This being substantially all the evidence, the court submitted the case to the jury upon the two following instructions requested by the plaintiffs: "1. The court instructs the jury that, if they believe from the evidence, that plaintiffs paid the amounts of the items, or any part thereof, to the parties mentioned in the itemized account, and that the defendants deducted such amounts from the amounts due such parties, and that the defendants received the benefit of such amounts so paid by plaintiffs, or agreed to pay the same to plaintiffs, then the jury should find for the plaintiffs such amount with six-per-cent. interest from the twentieth day of August, 1887.

"2. The court instructs the jury that although they may believe from the evidence that the defendants did not directly agree to pay the debt sued for, yet, if they further believe from the evidence that the plaintiffs paid said amount, or any part thereof, and that the defendant accepted and received the benefits thereof on debts for which they were originally liable, then the jury should find for the plaintiffs."

At the commencement of the trial the defendants objected to the reception of any evidence under the statement, on the ground that it did not state a cause of action. At the end of the case they requested the court to instruct the jury to find for the defendants.

Penninger v. Reilley.

I.   The statement in this case is sufficient.   It is not as indefinite, as that which this court adjudged to be insufficient in *Rosenburg v. Boyd*, 14 Mo. App. 429, and it is better than that which the supreme court adjudged insufficient in *Swartz v. Nicholson*, 65 Mo. 508.   It is in the form of the ordinary count in a declaration at common law for money had and received, and that is sufficient in a statement before a justice.

II.   In the next place the statement is in the nature of a count at common law for money had and received, and the evidence is entirely in support of a supposed indebtedness for goods sold and delivered.   It is well settled in this state that a party cannot sue, even before a justice of the peace, upon one cause of action and recover upon another ; and that, where his evidence leaves his petition or statement unimproved in its entire scope and meaning, he is not entitled to go to the jury. Even at common law, where the rule was certainly not more strict than under our code of procedure, a party could not sue for money had and received and recover for goods sold and delivered.   Greenleaf on Evidence, sec. 118.  ·

III.   The instructions above set out, upon which the court submitted the case to the jury at the request of the plaintiffs, were erroneous.   In the first place there was no evidence to establish the hypothesis upon which they were drawn.   They are drawn upon the hypothesis of the plaintiffs paying certain amounts to the employes of Greely for the benefit of the defendants.   There was no evidence of the plaintiffs ever having paid any amounts of *money*, or of anything which the parties had agreed to treat as money, to the employes of Greely or to anyone else, for the benefit of the defendants or otherwise.   As we have already stated, the evidence shows clearly the furnishing of goods to those employes, and not the payment of money.

In the next place these instructions allow a recovery, provided the defendants received the benefit of the

amount so paid, although they may not have agreed to repay such amount to the plaintiffs. Besides so much of the evidence adduced by the plaintiffs, as tended to show that the defendants had agreed to pay these amounts to the plaintiffs, there was no such evidence, that the defendants received any benefit from the goods sold and delivered by the plaintiffs to the hands of the defendants' subcontractor, Greely, as raised a duty on the part of the defendants to pay the plaintiffs for such goods. The mere fact, that a contract may subsist between A and B, which is beneficial in its results to C, does not give either A or B any right of action against C.

IV. The defense of the statute of frauds, which forms the subject of the next assignment of error, cannot be set up for the first time in an appellate court. Where the action is commenced in the first instance in the circuit court, this defense, in order to be available, must be pleaded. *Maybee v. Moore*, 90 Mo. 340. Where the action is commenced before a justice of the peace, and hence there may be no written defensive pleadings, the defense must be brought to the attention of the trial court *in some way*, either by objecting to evidence on that ground, or by tendering instructions on that theory. *Scharff v. Klein*, 29 Mo. App. 549. If the defendants had seen fit to raise this defense in the trial court, they might have done so by requesting an instruction submitting to the jury the question, whether the credit was given by the plaintiffs solely upon the promise of the defendants; for, unless so given, the case would be within the statute. *Rottman v. Fix*, 25 Mo. App. 571.

If the evidence in this case had shown, or even had tended to show, that the defendants were still indebted *to Greely* on account of his contract, or that, in settling with Greely, they deducted from what was coming *to him* the amount of these orders, then there would seem to be no reason, why they could not be held liable in a technical action for money had and received,

The John Hutchinson Mfg. Co. v. Henry.

because then the case would simply stand, as if they
had paid the money to Greely first, and he had returned
it to them for the purpose of paying these orders.   The
difficulty of the plaintiffs' case is, that, while their
testimony shows that the amount of the orders was
deducted from the pay of the men, it fails to show that
it was deducted from Greely's account.   The defendants
were under no legal obligation to pay the men anything;
hence their deducting these orders from the pay of the
men amounts to nothing.   We think the plaintiffs can,
if they supply the hiatus, recover in this action, under
the view taken by the· supreme court in *Schuster v.
Railroad*, 60 Mo. 290.

　　We accordingly reverse the judgment and remand
the cause. · It is so ordered.   All the judges concur.